I .PATRICIA RIVET MURRAY, Judge.
This is a maritime personal injury case. The principal issue presented is whether venue is proper in Orleans Parish. Finding venue improper, the trial court ordered this case transferred to Assumption Parish. From that decision, the plaintiff, Ted Scarbrough, appeals.
In this court, the defendants, J. Ray McDermott, Inc. (“J.Ray”), McDermott Incorporated, McDermott International, and J. Ray McDermott International Vessels, Ltd. (“J. Ray Vessels”), filed a motion to supplement the record, which we grant. For the reasons that follow, we clarify and affirm the trial court’s judgment as clarified.

*438
FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2001, Mr. Scarbrough, a Mississippi resident, filed a petition for damages in the Civil District Court for the Parish of Orleans. In his petition, Mr. Scarbrough named as defendants J. Ray, McDermott Incorporated, and McDermott International, and described those defendants as “foreign corporations licensed to do and doing business in the State of Louisiana, with their respective principal places of business in the Parish of Orleans.”
| j>The petition alleges that Mr. Scarb-rough was injured on or about March 1, 2000, while employed by McDermott as a seaman aboard the D/B 50, a vessel registered under the flag of Panama. The injury allegedly occurred when he was bitten by a brown recluse spider aboard the D/B 50. At that time, the D/B 50, a derrick barge, was docked in Mobile, Alabama, where it was being refurbished. The petition alleges that this is an action pursuant to the Jones Act, the “savings to suitors clause,” and general maritime law for unseaworthiness and maintenance and cure. According to the petition, McDermott’s alleged acts of negligence included failing “to fumigate or otherwise exterminate the brown recluse spiders, after being on notice that the vessel had suffered an infestation of such spiders.” The presence of such insects, the petition alleges, rendered the D/B 50 unseaworthy.
In response, J. Ray asserted a declinato-ry exception of improper venue, arguing that venue is improper in Orleans Parish for the following reasons. First, contrary to the allegations of the petition, J. Ray employed Mr. Scarbrough, and its designated principal place of business in this state is in Amelia, Louisiana, which is in Assumption Parish. See Dorsey v. J. Ray McDermott, Inc., 99-0840 (La.App. 4 Cir. 5/19/99), 750 So.2d 996 (specifically finding that J. Ray’s primary place of business is Assumption Parish).[1] Second, neither McDermott International nor McDermott Incorporated employed Mr. Scarbrough, owned or operated the D/B 50, or had any involvement with the job on which he was working at the time of the alleged injury; hence, those entities are not proper parties to this matter, and | ¡¡venue as to them is irrelevant in determining the proper venue of this matter.[2] Finally, Mr. Scarbrough’s alleged injuries occurred outside of this state in Mobile, Alabama. J. Ray, therefore, requested that this matter be transferred to a court of proper venue in Assumption Parish.
On September 14, 2001, Mr. Scarbrough filed a Verified Supplemental Petition for Issuance of Conservatory Writ of Attachment as to Non-Resident and for Issuance of Garnishment Under Writ of Attachment and First Amended Petition for Damages. *439 The amended petition asserted that Mr. Scarbrough was employed by defendant McDermott Incorporated either directly or indirectly through its subsidiary J. Ray, as a seaman aboard the D/B-50, which was owned by J. Ray Vessels, a wholly owned subsidiary of J. Ray.
In an apparent attempt to assert a claim directly against McDermott International and McDermott Incorporated, the amended petition asserted the following claim against those two entities:
On or about May 22, 2000, plaintiff received by check no. 4120000311 in the amount of $7,460.53 on the account of McDermott Incorporated by United States Mail. This check was sent from defendant’s New Orleans office.... [C]heck no. 4120000311 was stopped by action taken on May 23, 2000 by McDer-mott International, Inc. from its New Orleans office.
The amended petition acknowledged that Mr. Scarbrough subsequently received a second check for $4,114.28, yet claimed that McDermott International and McDer-mott Incorporation were liable to him for the difference between the two checks and for the damages caused by stopping payment on the first check.
l/Fhe amended petition added J. Ray Vessels as a fourth defendant, describing it as follows: “a corporation organized under the law of the Cayman Islands with its principal place of business in the Parish of Orleans” and which “owns a watercraft, the D/B 50, which operates in this state.” The amended petition further asserted that J. Ray Vessels, as owner of the D/B 50, entered into an oral charter party agreement with J. Ray, as operator, and that periodic payments were due pursuant to that agreement and that “such payments are made and/or received at the McDermott offices at 1450 Poydras Street,” which is in the Parish of Orleans. Those periodic payments are the property that Mr. Scarbrough seeks to garnish and attach in Orleans Parish so as to obtain quasi in rem jurisdiction over J. Ray Vessels.
Answering the garnishment interrogatories that were served on it, J. Ray asserted two general objections: improper venue (for the same reasons asserted above) and prematurity (given the lack of a judgment on which Mr. Scarbrough seeks to collect). Subject to those exceptions, J. Ray admitted the following:
• It is in possession of a derrick barge, the D/B 50, owned by J. Ray Vessels.
• It “is indirectly billed for its use of the D/B 50 through McDermott Holdings, Inc. However, the billing is done on a non-cash settlement basis, and no cash is exchanged.”
• It “has sufficient funds to satisfy any judgment plaintiff may obtain.”
Hearing on the exceptions was continued to January 11, 2002 to allow Mr. Scarbrough to conduct discovery. On January 14, 2002, the trial court entered judgment, granting J. Ray’s exception, finding venue improper in Orleans Parish, and ordering that “the above numbered cause of action” be transferred to Assumption Parish. In its judgment, the trial court stated that it based its decision on the supporting memorandum, the parties’ arguments, and the law. On February | s27, 2002, the trial court denied Mr. Scarb-rough’s Motion for Reconsideration and granted Mr. Scarbrough’s Motion for Sus-pensive Appeal.

DISCUSSION

This matter seeks appellate review of a judgment sustaining a declinatory exception of improper venue and transferring the case to a proper venue. We have previously classified such a judgment *440 granting a venue exception and transferring a matter to a proper forum as an interlocutory judgment. McCrea v. Mobil Oil Corp., 95-0537 (La.App. 4 Cir. 9/28/95), 662 So.2d 143. Although interlocutory, the judgment at issue is one that may cause irreparable injury. It follows then that this case is properly before us an appeal. See La. C.C.P. art.2083; Winninger v. State, Through Dep’t of Social Services, 32,086, p. 1 n. 1 (La.App. 2 Cir. 8/18/99), 740 So.2d 236, 237 (citing Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981)). The narrow issue before us is whether venue is proper in Orleans Parish for Mr. Scarbrough’s claim against J. Ray.
Venue is defined as “the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject.” La. C.C.P. art. 41. The general rules governing venue are set forth in La. C.C.P. art. 42, which provides various rules (based on the nature of the defendant) for venue at the defendant’s “home base.” Despite the departure from the “home base” approach to venue enunciated in Kellis v. Farber, 523 So.2d 843 (La.1988), “the defendant’s ‘home base’ still remains the starting point in the determination of where venue is proper, and in some cases is the only proper venue.” 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise, Civil Procedure § 3.4 (1999). The trial court, in its written reasons for judgment, concluded that such is the case here, stating:
| fiThe plaintiff was at all pertinent times employed by J. Ray McDermott, which is a foreign corporation authorized to do business in Louisiana. J. Ray McDer-mott’s principle [sic] business establishment is not in Orleans Parish, but rather in Amelia, Louisiana, which is located in Assumption Parish. Additionally, the plaintiff is a resident of Mississippi and the vessel was docked in Mobile, Alabama when the plaintiff was allegedly injured. Therefore, the only bases of venue here are the location of J. Ray McDermott’s principle [sic] business establishment or the place in which it maintains its primary place of business, both of which are in Assumption Parish.
Mr. Scarbrough concedes that J. Ray’s principal place of business, as this court held in Dorsey, supra, is Assumption Parish and does not contest that J. Ray’s “home base” venue under La. C.C.P. art. 42(4), is in Assumption Parish.[3] Mr. Scarbrough, however, contends that venue is proper as to J. Ray in Orleans Parish based on the exception provided for in La. C.C.P. art. 76.1. Alternatively, he contends that venue is proper under the concept of ancillary venue; he contends that he has a claim against one or more of the other three named McDermott entity defendants as to which venue is proper in Orleans Parish so as to create ancillary venue over his maritime claims against J. Ray.

La. C.C.P. art. 76.1 Venue

The “home base” venue rules of Article 42 are expressly made subject to the exceptions provided in Articles 71 through 85. La. C.C.P. art. 43. The pertinent exception here, relied upon by Mr. Scarbrough, is Article 76.1, which provides: “[a]n action on a contract may be brought in the parish where the contract was executed or the parish where any *441 work or service was performed or was to be performed under the terms of the contract.” La. C.C.P. art. 76.1. Mr. Scarb-rough contends that this exception applies because his employment contract with J. Ray |7was orally executed in Orleans Parish. In support of his position, Mr. Scarb-rough asserts in his amended petition the following regarding the formation of the employment contract in Orleans Parish:
“Plaintiff entered into his verbal contract of employment relationship with McDermott by means of an interview in the New Orleans offices of McDermott with Alan J. Bulot, who approved his hiring and the terms and conditions of his employment as a medical [sic] technician. Plaintiff was paid for his - employment services by means of checks written from J. Ray McDermott, Inc. in New Orleans and automatically deposited to his bank account at his home in Mississippi.”
For purposes of deciding a venue exception, the plaintiffs allegations in the petition are “taken as true.” Cacamo v. Liberty Mut. Fire Ins. Co., 99-3479, p. 6 (La.6/30/00), 764 So.2d 41, 45.
To rebut Mr. Scarbrough’s allegations, J. Ray relies upon an affidavit of Mr. Bulot, an electrical maintenance supervisor employed by J. Ray, who attests:
• As a convenience to plaintiff, who is a Mississippi resident, he interviewed Mr. Scarbrough in New Orleans, Louisiana.
• At the time of the interview, and currently, his office is located in Amelia, Louisiana.
• He did not offer plaintiff, Ted Scarb-rough, a job during the interview in New Orleans and has no authority to make such offers of employment on behalf of J. Ray McDermott, Inc. Such hiring decisions are made by J. Ray McDermott’s marine operations office in Amelia, Louisiana.
J. Ray further relies upon the deposition testimony of Mr. Scarbrough in which he acknowledges that he not was offered the position during the interview in New Orleans. Rather, he concedes that he was not offered the job until after he returned home to Mississippi. Once he returned home, he received a phone call from Dana Ourso, who was located in Amelia, and offered the position. After accepting that | soral offer, Mr. Scarbrough states that he filled out a “stack” of paper work in Amelia.
Given that Mr. Scarbrough’s own deposition testimony refutes his allegation that he was hired in Orleans Parish, his argument that Article 76.1 applies is unpersuasive. Nor is the fact that his paychecks apparently originated in Orleans Parish sufficient to make venue proper under Article 76.1. See Barham v. Richard, 97-0186, p. 6 (La.App. 4 Cir. 4/9/97), 692 So.2d 1357, 1360 (holding that “work or service” under Article 76.1 was not intended to include “an act as insubstantial as mailing a check to a certain address in payment of a promissory note.”)
Mr. Scarbrough also asserts several procedural arguments. First, citing La. C.C.P. art. 930, which provides that “evidence may be introduced to support or controvert any of the [declinatory] objections pleaded,” he asserts that he should have been allowed to put on evidence in support of his contention that the employment contract was entered into in Orleans Parish and that the trial court erred in relying on affidavits in resolving this disputed factual issue.
J. Ray replies that the district court held a hearing and considered evidence filed by the parties. To the extent the objection is that live testimony was not permitted, J. Ray argues that Mr. Scargb- *442 rough failed to object to the lack of such an evidentiary hearing on the exception and thus waived the right to one. J. Ray further argues that live testimony was unnecessary. J. Ray still further argues that it was only after the trial court granted its exception of improper venue that Mr. Scarbrough argued a hearing with live testimony was required.
In Nitro Gaming, Inc. v. D.I. Foods, Inc., 34,301, p. 5 (La.App. 2 Cir. 11/1/00), 779 So.2d 817, 821, which J. Ray cites in support of its waiver argument, an argument similar to that asserted by Mr. Scarbrough was rejected. In |9that case, the court reasoned that the plaintiff waived the right to seek an evidentiary hearing by failing to raise such an objection in the trial court and thus could not complain on appeal. The Nitro court also rejected the plaintiffs argument that the trial court erred in considering affidavits in support of defendant’s venue exception. In so doing, the court stressed that “the record reveals no objection by Nitro to the use of the affidavits in support of the venue exception.” 34,301 at p. 5, 779 So.2d at 821. The court thus concluded that Nitro’s failure to object to such hearsay evidence when it was admitted constituted a waiver of the objection and that “[t]he aggrieved party may not subsequently, upon appeal, urge that such evidence was actually inadmissible.” Id. Such is the case here. Despite Mr. Scarbrough’s contentions to the contrary, the record contains no proof that he raised such an objection in the trial court. We find, therefore, that this objection was waived.
Second, citing La. C.C.P. art. 932, Mr. Scarbrough asserts that the trial court erred in failing to allow him leave to amend to cure the exception. Mr. Scarb-rough’s sole basis for this argument is his assertion that he could, and did, cure the objection to venue by personally serving Robert Stumpf, an officer of J. Ray Vessels, in Orleans Parish, albeit the day after the venue exception was maintained. That argument, however, was rejected by the trial court in denying Mr. Scarbrough’s motion for reconsideration. Moreover, as discussed elsewhere, we conclude that such service on J. Ray Vessel’s officer was insufficient to cure the venue exception at issue. We find this argument unpersuasive.
Mr. Scarbrough next asserts that federal maritime law preempts the narrower Louisiana state law venue provisions. Stressing Mr. Scarbrough’s failure to cite any case law in support of that argument, J. Ray counters that the jurisprudence has |inuniformly held to the contrary. We agree. Indeed, in American Dredging Co. v. Miller, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), the United States Supreme Court stated that “venue is a matter that goes to process rather than substantive rights — determining which among various competent courts will decide the case” and that “state courts, in deciding admiralty cases, are not bound by the venue requirements set forth for federal courts in the United States Code.” 510 U.S. at 454, 114 S.Ct. at 989, 127 L.Ed.2d at 298 (Emphasis supplied). The trial court thus did not err in applying the Louisiana Code of Civil Procedure venue rules.

ANCILLARY VENUE

Ancillary venue was acknowledged, yet not necessarily embraced as a solution to all multiparty litigation venue problems, by the Louisiana Supreme Court in Underwood v. Lane Memorial Hosp., 97-1997, p. 8 (La.7/8/98), 714 So.2d 715, 719; the Court stated:
Ancillary venue applies when separate claims involving common or identical questions of fact share no common ven *443 ue. The concept of ancillary venue allows such claims to be tried together for reasons of judicial economy and efficiency, even though venue is not proper technically for one claim or one party.
This concept has been invoked by Louisiana appellate courts “primarily in cases involving cumulated claims against a single defendant.” 97-1997 at p. 9, 714 So.2d at 719. Appellate courts have extended this concept to the multiparty setting when venue is proper as to only a single defendant and there is “ ‘one claim against two [or more] parties arising out of one factual circumstance. ’ ” Id. (quoting Katherine Shaw Spaht, Persons, 46 La. L.Rev. 613, 618 (1986)(emphasis in original)). Moreover, “ ‘the Code of Civil Procedure adopts this concept in article N73 by permitting solidary obligors to be sued in any parish where venue is proper as to one of them.’ ” 97-1997 at p. 9, 714 So.2d at 719.
Appellate courts, however, have declined attempts to extend ancillary venue to situations in which a plaintiff brings different claims against different defendants. J & L Industries, L.L.C. v. Reeves, 31,742 (La. App. 2 Cir. 1/7/99), 723 So.2d 541, is instructive as to such situations. In that case, the court rejected the plaintiffs argument that proper venue for a contract claim against one defendant was sufficient to provide venue for a separate tort claim against a different defendant. In so doing, the court noted that appellate courts have applied the ancillary venue concept in the multiparty context “when there is one claim against two parties arising out of one factual circumstance.” 31,742 at p. 6, 723 So.2d at 544. Distinguishing the situation presented before it, the court noted that “[a]lthough the action arises out of a common factual circumstance, the plaintiff has asserted two different claims against separate defendants. In addition, a lack of common venue has not been demonstrated.” Id. The court thus concluded that ancillary venue was not applicable.
Similarly, in Hebert v. Myers, 449 So.2d 185 (La.App. 3 Cir.1984), the court declined to apply the concept of ancillary venue to cover different claims arising from different factual circumstances against the same defendant. Noting “only hints of possible interrelated facts concerning the allegations of trespass and house rental,” the court concluded that “[t]here are no allegations that qualify as interrelated facts which would permit venue to lie in any other court than the defendant’s domicile.” 449 So.2d at 188.
With those principles in mind, we turn to Mr. Scarbrough’s two-pronged ancillary venue argument. First, he argues that ancillary venue is proper in Orleans h ^Parish based upon the claim for stopping payment on a maintenance check that he asserted in his amended petition against McDermott International and McDermott Incorporated, two entities that undisputedly have their “home base” venue in Orleans Parish. Second, he argues that ancillary venue is proper in Orleans Parish based on his claim against J. Ray Vessels as owner of the vessel or, in the alternative, as owner of garnished property located in the Orleans Parish. J. Ray counters that McDermott International, McDermott Incorporated, and J. Ray Vessels have no obligation whatsoever to Mr. Scarbrough and that J. Ray Vessels is not subject to jurisdiction in this state. It follows then, J. Ray contends, that the inclusion of these three entities in the suit does not establish venue. We separately address these two ancillary venue arguments.
First, Mr. Scarbrough has alleged a creative theory of liability under the negotiable instrument law against McDermott International and McDermott Incorporated for stopping payment on a maintenance check. He argues that because venue is *444 proper as to that negotiable instrument law claim in Orleans Parish, the concept of ancillary venue renders venue proper as to his maritime claims against J. Ray. We disagree.
To the extent Mr. Scarbrough asserts a viable negotiable instrument claim against McDermott International and McDermott Incorporated,[4] such claim is |13neither factually nor legally interrelated to the maritime claims he seeks to maintain against J. Ray. Mr. Scarbrough’s negotiable instrument claims are different claims against different defendants and thus, as in J & L Industries, supra, the ancillary venue concept is inapplicable.
The second prong of Mr. Scarb-rough’s ancillary venue argument is based on his assertion that venue is proper as to his claim against J. Ray Vessels, a foreign corporation not licensed to do business in this state, which he has attempted to serve in various manners. As a result of such service, he claims he has obtained either quasi in rem or personal jurisdiction over J. Ray Vessels in Orleans Parish and that venue likewise is proper there as to both J. Ray Vessels and J. Ray.
Without definitively deciding the issue of whether the clever attempt at establishing quasi in rem jurisdiction by attaching or garnishing an intangible credit — the periodic charter payments — alleged to exist in Orleans Parish is valid, we find under the facts of this case such an attempt to create ancillary venue in Orleans Parish over this claim against J. Ray invalid. As noted above, ancillary venue in the multiparty context is primarily based on La. C.C.P. art. 73. Article 73 provides that an action against joint or solidary obligors may be brought at the “home base” — Article 42 venue — of any obligor who is named a defendant. La. C.C.P. art. 73. Even assuming quasi in rem jurisdiction can be obtained over J. Ray Vessels’ property in Orleans Parish, such jurisdiction would not establish “home base” venue over J. Ray Vessels under La. C.C.P. art. 42(5), which provides that venue for a foreign corporation not licensed to do business in the state, is “in the parish where the service may be, and subsequently is, served on the defendant.” See J & L Industries, supra.
luNor do we find Mr. Scarbrough’s attempt to create ancillary venue by service of process through the Louisiana long arm statute on J. Ray Vessels valid. Mr. Scarbrough’s argument is strikingly similar to the argument we rejected in a line of recent cases. See Head v. Brent Transp. Corp., 98-1308 (La.App. 4 Cir. 6/24/98), 715 So.2d 698; Lopez v. Afram Lines (USA) *445 Co., 96-2832 (La.App. 4 Cir. 6/11/97), 696 So.2d 273; see also Garcia v. Poseidon Shipping Co., 99-0322 (La.App. 4 Cir. 10/6/99), 746 So.2d 633. In that line of eases, we rejected the argument that venue was proper in Orleans Parish in a case brought by a foreign plaintiff against a foreign defendant arising from an accident occurring in a foreign place.
In Head, supra, we noted that the plaintiff was attempting to avoid the venue issue by invoking the Louisiana long arm statute and equating service under that statute with service of process on the defendant in Orleans Parish and thereby come under the “home base” venue rule of La. C.C.P. art. 42(5). Rejecting that argument, we reasoned that it overlooks the obvious fact that such service is delivered to the defendant outside this state and thus Article 42(5) is inapplicable. Mr. Scarbrough’s service on J. Ray Vessels through the long arm statute in the Cayman Islands is therefore insufficient to give rise to venue against it in Orleans Parish.
Nor does his attempt to serve J. Ray Vessels through the Watercraft Statute, La. R.S. 13:3479, dictate a different result. Indeed, that statute, on its face, does not appear to apply given that the vessel, the D/B 50, was docked in Mobile, Alabama at the time of the alleged injury being refurbished. Regardless, even assuming such service was proper, we find the apparent lack of personal jurisdiction over J. Ray Vessels, discussed next, renders that issue moot.
11KThe final argument Mr. Scarb-rough makes (one noted earlier in this opinion) is that by personally serving Mr. Stumpf, an officer of J. Ray Vessels, in Orleans Parish he cured the objection to improper venue. More precisely, he argues that such service created personal jurisdiction over J. Ray Vessels, and made venue proper under La. C.C.P. art. 42(5). This argument erroneously equates venue with personal jurisdiction.
Countering, J. Ray argues that such service is proper only if Louisiana courts may exercise personal jurisdiction over J. Ray Vessels. Continuing, J. Ray argues that Mr. Scarbrough’s personal service on Mr. Stumpf was improper because personal jurisdiction is lacking over J. Ray Vessels in this state. In support, J. Ray relies upon Mr. Stumpfs affidavit in which he attests to the following facts that clearly establish J. Ray Vessels’ lack of minimum contacts with this state; to wit:
• It is a foreign corporation registered in the Cayman Islands. Although it has corporate officers, it has no payroll employees. Its president is located in Houston, Texas.
• It does not now, nor did it at the time of the alleged injury (March 2000) have any offices or employees in Louisiana.
• It has never been registered, qualified, or licensed to do business in Louisiana.
• It does not now, nor did it at the time of the alleged injury own property in Louisiana.
• It did not advertise in Louisiana through any medium at the time of the alleged injury and has not done so through the present time.
• It has not entered into any contracts in this state from 1995 through the present time.
• It does not currently pay any taxes in this state and did not pay taxes in this state at the time of the alleged injury.
• It does not currently have a bank account in this state and did not have a bank account here at the time of the alleged injury.
J. Ray further points out that J. Ray Vessels is simply a holding company.
*446 lifiGiven the strong support for finding personal jurisdiction lacking over J. Ray Vessels coupled with the fact this is a case involving a Mississippi plaintiff, an Amelia employer-defendant over whom personal jurisdiction is not contested, and an accident occurring in Mobile, Alabama, we find no error in the trial court’s refusal to find the personal service on Mr. Stumpf created “home base” venue under Article 42(5) against J. Ray Vessels and ancillary venue over J. Ray Vessels.
These creative attempts to maintain venue in Orleans Parish are illustrative of the following scenario a commentator notes in discussing the use of broad state venue provisions in maritime cases:
In Texas, for example, venue is proper against a nonresident corporate defendant in any county where the cause of action arose or where the corporation has an agent or representative. Moreover, if venue is proper as to one defendant, venue is proper as to all defendants. These rules have led to the questionable practice of joining “venue defendants,” that is, defendants that may have little potential exposure, solely for the purpose of laying venue in a county the plaintiff believes to be advantageous.
Harold K Watson, Modern Practice Considerations in Maritime Personal Injury Litigation: Procedural Weapons for Venue Battles, 68 Tul. L.Rev. 473, 478 (1994).[5] Under the facts of this case, McDermott International, McDermott Incorporated, and J. Ray Vessel are “venue defendants.” Venue of these three entities is not relevant in determining the proper venue of this matter.
In conclusion, we affirm the trial court’s holding that venue is improper as to Mr. Scarbrough’s claim against J. Ray. We, however, clarify that the sole ruling before us is the judgment maintaining J. Ray’s exception of improper venue. Although the other defendants have asserted various exceptions and motions, those have not yet been decided, and we do not address them. To the extent the trial 117court’s judgment transfers Mr. Scarbrough’s claims asserted against the other defendants, we clarify and limit it to transfer the case only as to Mr. Scarbrough and J. Ray. See Winninger, 32,086 at p. 5, 740 So.2d at 239.

DECREE

For the foregoing reasons, we clarify the trial court judgment and affirm that judgment as clarified at appellant’s cost.
CLARIFIED AND AFFIRMED AS CLARIFIED.
WALTZER, J., concurs in the result.

. J. Ray officially changed its designated principal business establishment from Orleans Parish to Assumption Parish (Amelia, Louisiana) in August 1997. It did so by forwarding to the Louisiana Secretary of State an Amended Annual Report for the period ending August 7, 1997. With that amended report, J. Ray included a notarized statement signed by J. Ray’s vice-president, notifying the Secretary of State of that change in its principal business establishment. The Secretary of State certified that J. Ray's principal business establishment is in Amelia.

. These two entities also filed motions for summary judgment seeking dismissal on that basis; to wit: neither entity could be liable to Mr. Scarbrough because neither entity was his employer, owned the vessel, or had any involvement in the job on which the alleged injury occurred. Mr. Scarbrough also filed a Motion for Partial Summary Judgment to Compel Payment of Maintenance and Cure. Those motions are still pending.

. La. C.C.P. art. 42(4) presently provides for "home base” venue of a foreign corporation that is licensed to do business in this state in the parish where either "[1] its primary business office is located as designed in its application to do business in the state, or, [2] if no such designation is made, then in the parish where its primary place of business in the state is located.” La. C.C.P. art. 42(4).

. Countering the merits of that claim, J. Ray relies upon the deposition testimony of Tim Hebert, the senior human resources supervisor for J. Ray, who testified that regardless of what name was reflected on the maintenance check, it actually was drawn on J. Ray’s account. Explaining, Mr. Hebert stated that the McDermott entities "share a system" and that "the money for any individuals who receive maintenance benefits or anything that are paid on claims is J. Ray McDermott's." Mr. Hebert further testified that Mr. Scarbrough's sole affiliation with McDermott Incorporated or McDermott International Incorporated was that they issued a check to him on J. Ray’s behalf. Mr. Hebert still further testified that it was J. Ray that made the decision to stop the check and that it did so because the check was erroneously issued for the wrong amount. Contrary to Mr. Scarbrough's contention, Mr. Hebert testified that J. Ray contacted Mr. Scarbrough through his mother to inform him of that reason for stopping payment of the check and that it was going to reissue a check for the correct amount. Although we do not reach the merits of this claim, we note that it apparently is premised simply on the contention that McDermott International and McDermott Incorporated had some accounting involvement in issuing and stopping payment on a maintenance check; neither of those entities employ him and thus neither of those entities has any liability for maintenance and cure.

. We note that Mr. Scarbrough cites this law review article in his brief to this court in support of his arguments.